## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO.: 1:09-CR-119-WSD** |
| **v.** | ) | |
| | ) | |
| **JAMES G. OSSIE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT JAMES OSSIE'S SENTENCING MEMORANDUM

**COMES NOW**, Defendant James G. Ossie, by and through counsel, and

hereby files this Sentencing Memorandum.

**A.** **The specific offense characteristic set forth in U.S.S.G. §2B1.1(b)(16) is inapplicable as Defendant Ossie was not engaged in conduct covered by the enhancement.  (See Page 17, Paragraph 25 of the Pre-Sentence Report).**

In the Pre-Sentence Report [hereinafter "PSR"] there is a four-level increase

in the offense level pursuant to U.S.S.G. §2B1.1(b)(16)(A)  ". . . since the offense

involved a violation of securities law in that the investments offered by CRE

[Defendant Ossie's company] were securities as defined in federal securities laws

and, at the time of the offense, the defendant was an investment adviser as defined

in 15 U.S.C. §80b-2(a)(11)."  (See PSR, Page 17, Paragraph 25):

The provisions of U.S.S.G. §2B1.1(b)(16) are as follows:

If the offense involved

(A)    a violation of securities law and, at the time of the offense, the defendant was (i) an officer or a director of a publicly traded company; (ii) a registered broker or dealer, or a person associated with a broker or dealer; or (iii)  an investment adviser, or a person associated with an investment adviser;  or

(B)    a  violation of commodities law and, at the time of the offense, the defendant was (i)  an officer or a director of a futures commission merchant or an introducing broker; (ii)  a commodities trading advisor; or (iii)  a commodity pool operator,

increase by 4 levels.

The plain language of 2B1.1(b)(16) requires a showing that (1) the defendant violated a securities or commodities law and (2) that the defendant was a qualifying individual at the time of the violation.  United States v. Longo, 184 Fed. Appx. 910, 914 (III) (N.D.Ga. 2006).   In order for Defendant Ossie to receive this enhancement, he must be found to have violated either the securities or commodities law and then be a "qualifying individual" under the specific provision of either (A) or (B) of  U.S.S.G. §2B1.1(b)(16).[1]

---

[1]  The PSR only targets subsection (A) of U.S.S.G. §2B1.1(b)(16), however, in the interest of judicial economy and completeness, Defendant Ossie addresses

1.   **Defendant Ossie's conduct involved securities and not commodities and therefore, U.S.S.G. §2B1.1(b)(16)(A) may apply.**

A "security" is defined as:

> any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, **investment contract,** voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance, which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.[2]

Although "currency" is a commodity defined under the Commodities

Exchange Act, commodities may be considered "investment contracts" and thus,

regulated under securities laws.  See <u>SEC v. W.J. Howey Co.</u>, 328 U.S. 293, 66

S.Ct. 1100, 90 L.Ed. 1244 (1946); <u>CFTC v. International Foreign Currency, Inc.</u>,

---

subsections (A) and (B) herein.

[2]15 U.S.C. §78c(10)

The Steel Law Firm, P.C. 1800 Peachtree Street, N.W., Suite 300, Atlanta, Georgia 30309 (404) 605-0023

334 F. Supp.2d 305, 312 (E.D.N.Y. 2004).[3]  In <u>SEC v. W.J. Howey Co.</u>, supra, our

Supreme Court articulated what is now termed the  "Howey Test" to use for

analyzing when a would-be "commodity" is to be considered an "investment

contract."  Under the "Howey Test," a contract regarding a "commodity" may still

be considered an "investment contract" and hence, a security, if the following four

(4) factors are present: (1) investment of money, (2) in a common enterprise, (3)

with the expectation of profits, (4) from the efforts of others.  <u>Id.</u>; See Also: 6

Bromberg & Lowenfels on Securities and Commodities Fraud §15:4 (2d ed.).

　　　Furthermore, since Defendant Ossie's conduct involved "spot transactions"

and not "futures contracts," the Commodity Exchange Act does not apply, as the

Commodity Exchange Act regulates only options contracts and futures contracts,

but not spot transactions.  See <u>Commodity Futures Trading Comission v. Sterling</u>

<u>Trading Group, Inc.</u>, 605 F.Supp.2d 1245, 1296-1297 (S.D.Fla. 2007); <u>C.F.T.C. v.</u>

<u>Zelener</u>, 373 F.3d 861 (7th Cir. 2004).[4]

---

[3] Since this crime involved an "investment contract," to wit: a security, U.S.S.G. §2B1.1(b)(16)(B) may not apply.

[4] Defendant Ossie would buy foreign currency, a commodity, on an over-the-counter, off-exchange as these terms are defined in <u>www.cftc.gov</u>.  These purchases were "spot transactions" as defined in <u>CFTC v. Sterling Trading Group, Inc.</u>, 605 F.Supp.2d 1245, 1296-1297 (S.D.Fla. 2007).

(i) **Defendant Ossie's conduct does not satisfy the definition of (i) an officer or director of a publicly traded company; (ii) a registered broker or dealer, or person associated therewith; or (iii) an investment adviser or a person associated therewith, as these terms are defined in U.S.S.G. §2B1.1(b)(16)(A).**

   (a) Defendant Ossie is not an officer or director of a publicly traded company.   Nothing in the facts of this case, including the Bill of Indictment, the guilty plea and the Pre-Sentence Report, establishes that Defendant Ossie fits the definition of an officer or director of a publicly traded company.  In fact, CRE was not a publicly traded company.  Hence, subsection (i) of U.S.S.G. §2B1.1(b)(16)(A) does not apply in the case at bar.

   (b) Defendant Ossie has not been registered as a broker or dealer, and is not a person associated with a broker or dealer.  Specifically, a registered broker is any person engaged in the business of effecting transactions in securities for the accounts of others.  See 15 U.S.C. §78c(4)(A); See 15 U.S.C. §80b-2(a)(3).  Importantly, neither Defendant Ossie nor his company was registered

as a broker.  Additionally, "dealer" is defined as "any person engaged in the business of buying and selling securities for such person's own account through a broker or otherwise."  See 15 U.S.C. §78c(5)(a).  The facts in the case at hand prove that Defendant Ossie was not registered as a dealer.  Therefore, Defendant Ossie, not a registered "broker" or "dealer," was also not associated with a broker or dealer trading other persons' monies for foreign currency.  Based upon the above, the facts do not fit the definition set forth in U.S.S.G. §2B1.1(b)(16)(A)(ii).

(c)      "Investment adviser" as defined by 15 U.S.C. §80b-2(a)(11) is defined as follows:

"Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities; but does not include (A) a bank, or any bank holding company as defined in

the Bank Holding Company Act of 1956, which is not an investment company, except that the term "investment adviser" includes any bank or bank holding company to the extent that such bank or bank holding company serves or acts as an investment adviser to a registered investment company, but if, in the case of a bank, such services or actions are performed through a separately identifiable department or division, the department or division, and not the bank itself, shall be deemed to be the investment adviser;

(B) any lawyer, accountant, engineer, or teacher whose performance of such services is solely incidental to the practice of his profession;

(C) any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor;

(D) the publisher of any bona fide newspaper, news magazine or business or financial publication of general and regular circulation;

(E) any person whose advice, analyses, or reports relate to no securities other than securities which are direct obligations of or obligations guaranteed as to principal or interest by the United States, or securities issued or guaranteed by corporations in which the United States has a direct or indirect interest which shall have been designated by the Secretary of the Treasury, pursuant to section 3(a)(12) of the Securities Exchange Act of 1934 as exempted securities for the purposes of that Act;

(F) any nationally recognized statistical rating organization, as that term is defined in section 3(a)(62) of the Securities Exchange Act of 1934, unless such organization engages in issuing recommendations as to purchasing, selling, or holding securities or in managing assets, consisting in whole or in part of securities, on behalf of others; or

(G) such other persons not within the intent of this
paragraph, as the Commission may designate by rules
and regulations or order.

Defendant Ossie did not receive, for **compensation**, monies in exchange for advising others, either directly or indirectly, through publications or writings as to the advisability of investing in, purchasing or selling securities.  Specifically, Defendant Ossie never received any compensation for his advising others. Instead, Defendant Ossie was to receive payment based upon the profit made by the trading of foreign currency.  (See PSR pages 3-5; specifically page 5, paragraph 14, where Defendant Ossie was captured on tape explaining that he receives money from trading).  Thus, Defendant Ossie was not paid for his advice to others and hence, there was no compensation as defined in the term "investment adviser."[5]

Furthermore, there were no publications or writings as to the value of any security or as to the advisability of investing in, purchasing or selling any particular security.  Instead, Defendant Ossie simply stated to would-be investors that if they gave Defendant Ossie U.S. currency, thirty (30) days later, Defendant

---

[5]  It is critical to note that the definition of "Commodities Trading Adviser" incorporates compensation <u>or profit</u>.  See 7 U.S.C. §1a(6)(A)(i) (Emphasis added).

Ossie would return a specific percentage of said U.S. currency and, if desired, the principal amount. There was no advice given regarding any specific manner or means to trade any security. (See PSR pages 2-6).

Finally, there is no evidence that Defendant Ossie or his company issued or promulgated analysis or reports concerning any specific security. (See PSR pages 3-6). Thus, Defendant Ossie does not fit the definition of an "investment adviser."

Here, the statutory language set forth in U.S.S.G. §2B1.1(b)(16)(A) is unambiguous and hence, under the particular facts of this case, this enhancement should respectfully not apply. See United States v. Chang Qin Zheng, 306 F.3d 1080 (11th Cir. 2002); United States v. Koonce, 991 F.2d 693, 698 (11th Cir. 1993). The burden of persuasion and production is on the Government to establish each aggravated factor upon which a harsher sentence is based. See United States v. Agis-Meza, 99 F.3d 1052 (11th Cir. 1996). Based upon the above, Defendant Ossie respectfully asks this Honorable Court to find that said enhancement located in Paragraph 25 of the PSR shall not apply.

**2. Defendant Ossie is not a "qualifying individual" under 2B1.1(b)(16)(B)(i)- (iii), and therefore, the four (4) level**

enhancement does not apply.[6] [7]

(i)      Pursuant to U.S.S.G. §2B1.1(b)(16)(B)(i), Defendant Ossie is not an officer or director of a futures commission merchant or an introducing broker as discussed below.

"Futures commission merchant" means an individual, association, partnership, corporation or trust that (A) is engaged in soliciting or accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility; and (B) in or in connection with such solicitation of such supporters, accepts any money, securities or property (or extends credit in lieu thereof) to margin, guarantee or secure any trades or contracts that result or may result therefrom.  See 7 U.S.C. §1a(20).

The evidence in the case sub judice is that Defendant Ossie never solicited or accepted orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivative transaction execution

---

[6]  As stated above, the PSR does not include U.S.S.G. 2B1.1(b)(16)(B) as a reason to apply the four (4) point enhancement.  (See PSR Page 17, Paragraph 25).  However, to be complete, Defendant Ossie discusses same herein.

[7]  As argued above, since this "investment contract" is a security, undersigned counsel presumes that is why the Probation Officer correctly did not consider U.S.S.G. §2B1.1(b)(16)(B), to wit: commodities violation.

facility.  In order to fit this definition, all trading must be performed "on or subject to the rules of any contract market or derivatives transaction execution facility." (See 7 U.S.C. §1a(20)(A)).  A "contract market" is a board of exchange designated by the Commodity Futures Trading Commission ("CFTC") to trade futures or options under the Commodity Exchange Act, according to the CFTC's own website.  (See www.cftc.gov).  A "board of trade" is defined as any organized exchange or other trading facility.  (See 7 U.S.C. §1a(2).  A "Derivatives Transaction Execution Facility," hereinafter DTEF, is a type of contract market that is specifically registered with the CFTC as a DTEF and is subject to fewer regulatory requirements than a contract market.  (See www.cftc.gov).

Here, Defendant Ossie was not trading "on or subject to the rules of any contract market."  Defendant Ossie was utilizing "over-the-counter" trading, which is defined as trading "not listed on any exchange."  (See www.cftc.gov). Therefore, Defendant Ossie does not fit the definition set forth in U.S.S.G. §2B1.1(b)(16)(B)(i).  Furthermore, 7 U.S.C. §1a(20)(B) requires that in connection with any solicitation or acceptance of an order, Defendant Ossie must have accepted money to margin, guarantee or secure any trades that may result therefrom.  The facts of this case do not fit this definition.  Therefore, this four (4)

point enhancement cannot apply.

Additionally, Defendant Ossie is not an "introducing broker" as that term is defined in 7 U.S.C. §1a(23).  Said term means any person who is engaged in soliciting or in accepting orders for the purchase or sale of any commodity for the future on or subject to the rules of any contract market or derivatives transaction execution facility but does not accept money, securities or property to margin, guarantee or secure any trades or contracts that may result therefrom.  However, in the case at hand, Defendant Ossie never accepted orders for the purchase or sale of any commodity for future delivery on or otherwise and hence, the facts do not fit the definition of this subsection.[8]  Specifically, Defendant Ossie solely obtained money and was then supposed to give back money.  Hence, Defendant Ossie never accepted money to purchase commodities for future delivery, but simply took money to then, thirty (30) days later, return a profit and, if desired, the principal to the investor.  (See PSR pages 2-6).

Thus, based upon the above, subsection (i) of U.S.S.G. §2B1.1(b)(16)(B) does not apply.

---

[8] As discussed above, Defendant Ossie only traded on "over-the-counter" platforms, not on any contract market.

### (ii)     Defendant Ossie is not a "Commodity Trading Adviser" as that term is defined by statute.  See 7 U.S.C. §1a(6).

Specifically, a "Commodity Trading Adviser" means any person who (i) for compensation or profit, engages in the business of advising others, either directly or through publications, writings or electronic media, as to the value of or the advisability of trading in (I) any contract of sale of a commodity for future delivery made on or subject to the rules of contract market or derivatives transaction execution facility; (II) any commodity option authorized under section 4c; or (III) any leveraged transaction authorized under section 19; or (ii) for compensation or profit, as part of a regular business, issues or promulgates analysis or reports concerning any of the activities referred to in clause (i).

It is important to note that Defendant Ossie did not conduct any contract of sale of a commodity for future delivery on.  Specifically, Defendant Ossie solely purchased foreign currency, specifically, Japanese currency, on a spot transaction basis and hence, same is distinguished from a futures contract.  (See Commodities Future Trading Commission website glossary at www.cft.gov, definition of cash and spot commodities; Commodity Futures Tradition Commission v. Sterling Trading Group, Inc., 605 F.Supp. 2d 1245, 1296-1302 (S.D.Fla. 2007)).  A futures contract is an agreement to purchase or sell a commodity for delivery in the future

(i) at a price that is determined at the initiation of the contract; (ii) that obligates each party to the contract to fulfill the contract at a specified price; (iii) that is used to assume or shift the price risk; and (iv) that may be satisfied by delivery or offset. (See www.cftc.gov - "futures contract").  Defendant Ossie's actions do not provide any commodity for future delivery on a contract market as that term is defined.  As argued above, Defendant Ossie's conduct does not fit the statutory requirements of a "contract market" or "derivatives transaction execution facility."   (See www.cftc.gov - "contract market" and "derivatives transaction execution facility").[9]

As discussed above, Defendant Ossie's trades were on an "over-the-counter" platform and thus, the definition in U.S.S.G. §2B1.1(b)(16)(B)(ii) does not apply.

---

[9] A "contract market" is a board of trade or exchange designed by the Commodity Futures Trading Commission to trade futures or options under the Commodity Exchange Act.  The contract market can allow both institutional and retail participants, and can list for trade in future contracts on any commodity, provided that each contract is not readily susceptible to manipulation.

"Derivatives transaction execution facility" is defined as a board of trade that is registered with the CFTC as a DTEF and is subject to fewer regulatory requirements than a contract market.  To qualify as a DTEF, derivative transaction execution facility, an exchange can only trade certain commodities and generally must exclude retail participants.

Defendant Ossie did not trade in any commodity option under 7 U.S.C. §6c, pertaining to "prohibited transactions."   This section regulates prohibited transactions such as hedging (7 U.S.C. §6c (a)(1)(A)), price determination (7 U.S.C. §6c (a)(1)(B)), and delivery (7 U.S.C. §6c (a)(1)(C)).  Subsection (d) focuses on "dealer options" made prior to the enactment of the Commodity Futures Trading Commission Act of 1974, which plainly excludes Defendant Ossie, who began trading in 2008.

Further, Defendant Ossie did not engage in any "leverage transaction" under 7 U.S.C. §23, which pertains to "standardized contracts for certain commodities" such as margin accounts (7 U.S.C. §23(a)), silver or gold bullion or bulk coins (7 U.S.C.S. §23(b)).

Finally, neither Defendant Ossie nor CRE ever, "as part of a regular business," issued any analyses or reports pertaining to commodities for future delivery.

Based upon the above, Defendant Ossie does not fit the definition of a "Commodity Trading Adviser" as defined in 7 U.S.C. §1a(6) and U.S.S.G. §2B1.1(b)(16)(B)(ii).

### (iii)   Defendant Ossie is not a "Commodity Pool Operator."

A "Commodity Pool Operator" is defined as any person engaged in a business that is in the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others funds, securities or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivative transaction execution facility.  See 7 U.S.C.S. §1a(5).

As discussed above, since Defendant Ossie was not trading in commodities for future delivery on or subject to the rules of a contract market or derivative transaction execution facility, this section does not apply to Defendant Ossie.

For the reasons set forth above, Defendant respectfully requests that this Honorable Court sustain Defendant Ossie's objection to the Paragraph 17 of the Pre-Sentence Report.

**B.**    **This Honorable Court should respectfully grant a variance from the guildeine range based on the criteria set forth in 18 U.S.C. 3553(a).**

Since United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a District Court is no longer required to sentence within the range provided by the Sentencing Guidelines, but is still obligated correctly to calculate that range.  Post-Booker sentencing requires two steps. First, the District Court must consult the Guidelines and correctly calculate the range provided by the Guidelines. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the District Court must consider several factors to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the Defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the Defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. See 18 U.S.C. § 3553(a);  United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam).

Defendant Ossie lived in extraordinarily lawful and moral life until the case for which Defendant Ossie now stands before this Honorable Court.  Defendant Ossie's life has been filled with charitable works and good deeds for family members, friends and strangers alike.  (See letters in support of Defendant Ossie's life's work and character, attached hereto).  This case now finds Defendant Ossie in a diametrically opposed life circumstance.  Defendant Ossie respects and understands that this Honorable Court will fashion a just sentence.

Defendant Ossie respectfully asks this Honorable Court to consider the letters attached hereto in support of a variance from the sentencing guidelines.  Further, the loss amount at issue in the case sub judice is eighteen million, seven hundred sixty-one thousand, one hundred seventy-five ($18,761,175.00) dollars over an eight-month period.  In other cases, when the loss amount was under one hundred million ($100,000,000.00) dollars, Defendants have received single-digit sentences in terms of years.  See United States v. Parris, 573 F.Supp.2d 744, 753-754 (E.D. N.Y. 2008).

Defendant Ossie is well aware that each case is individual and hence, cannot be viewed the same as others.  However, based upon Defendant Ossie's history, to wit: forty-eight (48) years of non-criminal conduct, as well as the fact that any time

spent in prison will reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, Defendant Ossie respectfully asks this Honorable Court to find, pursuant to 18 U.S.C §3553(a) that a variance from the guidelines sentence is appropriate.  Finally, Defendant Ossie has always maintained that his life's work henceforth will be to attempt to pay restitution to the victims in the case at bar.

**WHEREFORE**, Defendant James G. Ossie respectfully requests that this Honorable Court hear argument on the issues addressed herein and fashion an appropriate sentence.[10]

This the 27th  day of July, 2009.

Respectfully submitted,

S/ Brian Steel
**BRIAN STEEL**

_____

[10]   Undersigned counsel telephoned this Honorable Court's chambers on Monday, July 27, 2009, to advise that AUSA Anand and undersigned counsel estimate one hour and thirty minutes for this sentencing hearing.  This is because Defendant Ossie has advised that he wishes to have no witnesses to speak on his behalf as Defendant Ossie respects this Honorable Court's wisdom and judgment. If this Honorable Court wishes to have live witnesses testify on Defendant Ossie's behalf, same will be subpoenaed, instanter.

<u>S/ Anthony Morgese</u>
**ANTHONY MORGESE**
3233 South Cherokee Lane
Building 1000
Woodstock, GA  30188

Counsel for Defendant Ossie

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the within and

foregoing **<u>DEFENDANT JAMES OSSIE'S SENTENCING MEMORANDUM</u>**

on all individuals registered with electronic filing (ECF) for this case:

Justin Anand, Esq.

Douglas Gilfillan, Esq.

Assistant United States Attorney

1800 U.S. Courthouse

75 Spring Street, Sw

Atlanta, GA  30335

This 27th day of July, 2009.


Respectfully submitted,


S/   BRIAN STEEL

**BRIAN STEEL**